GRANT L. ASHMORE, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION OF THE STATE OF DELAWARE, Appellee.

(*February* 27, 1952.)

HERRMANN, J., sitting.

*Albert J. Stiftel* and *Nathan Michlin* (*pro hac vice*) for Appellant.

*Frank L. Speakman* and *Robert V. Huber* for Appellee.

Superior Court for New Castle County, Civil Action No. 587, 1951.

HERRMANN, J.:

This is an appeal from the denial by the Delaware Unemployment Compensation Commission of the appellant's claim for unemployment compensation benefits.

The material facts, as found by the Commission and shown by the record, may be summarized as follows: The appellant was formerly employed as an electrical engineer by E. I. du-Pont de Nemours & Company. He was retired on pension at the age of 65 pursuant to company policy requiring retirement at that age. Immediately after separation from employment, the appellant moved from Delaware to Floral City, Florida, where he established his permanent residence. He promptly registered for work at the designated Employment Service office nearest his home and reported for employment as required. Floral City is a small community of approximately 1,500 people, having little commercial or industrial activity except citrus fruit packing plants and retail stores. Within a radius of 15 miles from Floral City, however, there are several communities, having a total population of approximately 9,000 people, in which are located fruit packing plants, stores, garages, building contractors, tourist homes, real estate developments and the various other types of commercial enterprises usually found in the smaller communities of the fruit producing sections of Florida. The appellant had an automobile and was willing and able to commute to and work in any of the communities within this area. He applied to numerous prospective employers in Floral City, Inverness, Brookville and Clearwater. He also sought work in Ocala, a town located about 38 miles from his home, having a population in excess of 11,000. The appellant was not selective as to wages, hours or type of work. He applied for any kind of work which he might "pick up", including employment as timekeeper, fruit stand attendant, or electrician. The Employment Service did not offer him work and his own efforts were unsuccessful.

The Commission affirmed the following decision of its Referee: " * * * it is decided that the claimant has removed himself from the labor market and is not actively seeking work. He is denied benefits during his current period of unemployment and until such time as the claimant may affirmatively show that

he has been actively seeking work by again restoring himself to the labor market."[1]

The Delaware Unemployment Compensation Law provides that an unemployed person shall be eligible for benefits only if he is found to be (1) able to work, (2) available for work, and (3) actively seeking work.[2] The first two eligibility requirements are contained in most unemployment compensation statutes. The third requirement is found in the statutes of only a few other states. The statutory requirements are stated in such general terms that much judicial and administrative interpretation has been required to give them meaning. As the result of such intepretation, the availability requirement has been accorded a fixed meaning and purport. It is now settled that the purpose of the "available for work" provision is to test the defendant's attachment to a labor market. In the instant case, it is apparent that the Commission failed to distinguish between the second and third eligibility requirements and that it applied to the "actively seeking work" requirement the test generally recognized as applicable to the "available for work" requirement.

Each of the statutory requirements has a separate meaning and purpose. In the interest of orderly administration, the distinction between the separate eligibility specifications

---

[1] In support of his decision, the Referee had stated that in his opinion:

"The evidence in this case shows clearly that the claimant has taken himself from a large industrial area such as Wilmington, Delaware, to a small community where very little work is available for him. He has practically removed himself from the labor market by establishing a residence in a community where there are no prospects for work. Had he remained in the Wilmington area, we feel certain that with his background and experience he would have eventually found work.

\* \* \* \* \* \*

"It is undoubtedly true that the claimant is able to work and is available for work; but, by taking himself to a community where there is no work available for him, we are compelled to conclude, he has removed himself from the labor market and has not been actively seeking work. \* \* \*."

[2] 41 *Delaware Laws, Chapter* 258, *Sec.* 4(c), *as amended by* 46 *Delaware Laws, Chapter* 162, *Sec.* 3.

should be maintained. It is held that the Commission erred in basing its conclusion that the appellant was not "actively seeking work" upon the premise that he had "removed himself from the labor market".

In order to expedite the disposition of the case, consideration will be given to the question of whether, under the facts, the appellant was "available for work", within the meaning of the Statute. An oft-quoted statement of the meaning of this phrase appears at 55 *Yale Law Journal*, 123, 124: "The availability requirement is said to be satisfied when an individual is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Since, under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them."

In determining the existence of a labor market, the question is not whether the claimant had a reasonable opportunity to obtain work. The decisive question is whether the kind of services which the claimant was offering was generally performed in the geographical area in which he was seeking employment. A labor market may exist even though there be more applicants than there are job vacancies. Employment opportunity at the time of the offering of services is not a factor essential to the existence of a market for such services. *Reger v. Administrator, Unemployment Compensation Act*, 132 *Conn.* 647, 46 *A.* 2d 844, 846; *cf. Roukey v. Riley*, 96 *N. H.* 351, 77 *A.* 2d 30. This conclusion is reached with knowledge of the rule

established in Pennsylvania that the existence of a labor market depends upon the existence of reasonable opportunity for the claimant to obtain employment. See *In re Appeal of Teicher,* 154 *Pa. Super.* 250, 35 *A.* 2d 739. I find the Pennsylvania rule unacceptable because I consider it to be inconsistent with the fundamental purpose of unemployment compensation legislation.

Moreover, there is no requirement in the Unemployment Compensation Act that a claimant must be available for work in the locality in which he last worked. or resided or in any other particular place. Nor is there any requirement that he must be available for his usual type of work. The fact that a claimant has moved from. one locality to another does not form a basis for holding him unavailable for work even if it appears that his chances for employment would have been better if he had remained in his former locality.

The appellant was offering services ranging from unskilled labor as a timekeeper to skilled work as an electrician. In view of the meaning of "labor market" as above stated, I am of the opinion that there is nothing in the Commission's findings of fact, or elsewhere in the record, to sustain the conclusion that there was no labor market in and around Floral City for the types of services which the appellant was offering.

It is incumbent upon the Court to point out that the transcript of the testimony in this case contains numerous blank spaces caused, it seems, by the inability of the transcriber to reproduce in writing testimony which had been recorded by. mechanical device. Upon appeal from the Commission, this Court is limited to the record made before the Commission. It is manifest that an incomplete record of the evidence makes impossible a proper review by this Court. In the instant case, it has been assumed that untranscribed testimony, indicated by blank spaces in the record, is not detrimental to the appellant's interests.

The decision of the Unemployment Compensation Commission will be reversed. An Order may be submitted on notice.