534 A.2d 585

Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Burrell Construction & Supply Company, Inc., Respondent.

Argued April 23, 1987, before Judges DOYLE and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Kenneth B. Allen,* Assistant Counsel, with him, *Robert J. Shea* and *Charleton O. Strouss,* Assistant Coun-

sels, *Spencer A. Manthorpe,* Assistant Chief Counsel and *Jay C. Waldman,* General Counsel.

*Frank M. Van Ameringen,* for respondent.

OPINION BY JUDGE BARRY, December 11, 1987:

This is an appeal by the Pennsylvania Department of Transportation (DOT) from an order of the Board of Claims (Board) awarding Burrell Construction and Supply Co. Inc., (Burrell), respondent, $33,701.15 in additional compensation for paving work.

On June 3, 1980, DOT and Burrell entered into a contract to repair and improve Perrysville Avenue in Pittsburgh. These repairs and improvements consisted of: scraping or milling the surface course, base replacement, drainage work, traffic signal improvement and resurfacing the "wear" surface of the road. The work was scheduled to be completed in 146 days.[1] June 16, 1980 was the target starting date; November 9, 1980 was the anticipated completion date.[2] The contract specified that paving work could not be performed after October 31, 1980.[3] Due to the unavailability of Burrell's

---

[1] A review of the Contract and the testimony would indicate that the contractor was directed to proceed as of June 16, 1980. This 146 day Contract could not be completed prior to November 1, 1980. The placement of the bituminous material, the last phase of the Contract, could not be accomplished until November 1, 1980. Accordingly, from day one, this Contract could not be completed in accordance with its terms. This fact was known by and agreed to by the Plaintiff and Defendant.

[2] The initial notice to proceed set the starting date at April 28, 1980 but due to administrative delays the date was changed to June 16, 1980.

[3] DOT has established October 31 as a cut-off date for paving. It contends that paving after that date is unsafe due to the chance of inclement weather. The testimony established that DOT frequently grants extensions of time to pave after October 31. In this case, DOT refused Burrell's request to pave after the deadline because of inclement weather forecasts.

milling subcontractor, actual work on the road surface did not begin until July 8, 1980. At the request of DOT, Burrell dug ten test holes to determine the sufficiency of the road base. After evaluating the results of this testing, the parties switched from a concrete base material to an asphalt base. Further problems were encountered when unsuitable sub-grade material was discovered. As a result of these problems the original contract was modified to include additional compensation to Burrell. On October 23, 1980, Burrell had performed all of the work except for laying the final wearing surface. This was estimated to require three days to complete. Due to inclement weather during the last week of October 1980, Burrell was unable to finish the project before the paving deadline. On October 23, 1980 and November 3, 1980, Burrell requested permission to pave after the October 31, 1980 cut-off date. DOT refused both requests. Consequently, Burrell was unable to resurface the road until the spring of 1981.

Burrell brought suit against DOT for additional expenses resulting from remobilization costs and additional repairs for winter damage to the road surface. The Board stated that the parties were victims of a mutual mistake of fact as the contract could not be performed within the anticipated time frame as the November 9, 1980 deadline extended beyond the October 31 cut-off date for road paving. The Board opined that both parties had acquiesced to performing a contract which was impossible to complete in the stated time frame. Therefore, according to the Board, DOT should be held responsible for Burrell's additional remobilization costs incurred in the spring of 1981, so as to prevent a miscarriage of justice.

DOT contends that the Board committed an error of law in applying the doctrine of mutual mistake because mistake was never pleaded or proved and this doctrine

cannot be applied to a delay in the award of a public contract in Pennsylvania. DOT also alleges the Board's findings of fact, that the paving operations would require 146 days to complete, is not supported by substantial evidence, and disregards competent evidence. It also contends that Burrell's exclusive remedy was a request for an extension of time.

Our scope of review is limited to determining whether necessary findings were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. The burden of proof is on the contractor who seeks reimbursement from the Commonwealth for increased costs, charges, expenses or damages to show the facts necessary for such recovery. *Penn-Jersey Contractors, Inc. v. General State Authority*, 12 Pa. Commonwealth Ct. 203, 315 A.2d 920 (1974); *Larry Armbruster & Sons, Inc. v. State Public School Building Authority*, 95 Pa. Commonwealth Ct. 310, 505 A.2d 395 (1986).

The Board erred in applying the doctrine of mistake. Under the Pennsylvania Rules of Civil Procedure and existing case law mistake must be specifically alleged before it can be addressed by the Board. *See* 4 Pa. Code §121.1, Pa. R.C.P. No. 1019(b) and *Borrell v. Borrell*, 346 Pa. Superior Ct. 1, 498 A.2d 1339 (1985). It is clear from the record that mistake was never specifically pleaded by either party.

Burrell urges us to consider the Board's conclusion that a mutual mistake had occurred as a misstatement of the theory of implied consent and waiver. Burrell bases this argument on the assertion that DOT's past practice in dealings with it and other contractors was to extend permission beyond the November 1st, poor weather deadline date. Burrell argues that due to DOT's initial delay both parties were aware of a probability of work-

ing beyond this paving deadline but silently proceeded with optimism to conclude the contract and that DOT was primarily responsible for the on-going delays during contract performance.

DOT, on the other hand, argues that the Board's finding that the paving was required to be performed in the last stage of the 146 day contract is unsupported by the record and that the record clearly establishes that Burrell should have completed paving well before the November 1st cut-off date. It alleges that the contract clearly shows that the paving was to be completed by eighty-six calendar days into the contract and thus the paving should have been completed by September 10th. The initial dates for paving were to be performed between the thirty-seventh to eighty-sixth calendar days of the contract. When the notice to proceed date was shifted from April to June, the paving completion date was shifted from July until September 10th. Under the terms of the contract Burrell could have requested a re-evaluation of the contract time[4] or a change in the distribution of the contract time.[5] Therefore, DOT con-

---

[4]    DETERMINATION AND ADJUSTMENT OF CONTRACT TIME FOR COMPLETION.

(B) Adjustment of Contract Time.

The contractor may request a re-evaluation of the contract time *if the anticipated notice to proceed date used by the Department for the calculation of the contract time has not been met,* through no fault of the contractor, within a reasonable period of time. The request must be made *within 10 days* after the actual notice to proceed date. *No claim for additional compensation will be recognized by the Department based on a change in the anticipated notice to proceed date.* (Emphasis added.)

[5]    108.03 PROSECUTION AND PROGRESS

(b) Distribution of Contract Time.

The Department will furnish the contractor a form designated Distribution of Contract Time, on which will be shown the detailed schedule or plan of the estimated

cludes that the parties had agreed to another completion date which was well before the October 31st paving deadline and negates the requirement of completion in 146 days.[6]

Unfortunately, the Board's findings of fact are limited to consideration of what was perceived as a controlling issue of mutual mistake and do not address either Burrell's or DOT's arguments.

The Board is entrusted with the duty of fact finding, Lipchak v. Unemployment Compensation Board of Review, 34 Pa. Cmwlth 451, 383 A.2d 970 (1978), and we may neither assist nor interfere with that important function. This Court has held that '[w]hen the fact-finder in an administrative proceeding is required to set

---

time periods *during which it is contemplated by the Department that the contractor is to perform the various controlling operations on the project,* and the total contract time allowed for completion of all work on the project.

If the contractor has a different plan of operation, he may submit, in writing, a full statement of his schedule or plan, together with a straight line diagram and analysis of operations, to the engineer for consideration, and upon agreement between the contractor and the engineer, a revised form approved by the Chief Highway Engineer will be furnished to the contractor, and the progress of the work shall be based thereon; *otherwise, the original schedule of the Department shall govern.* (Emphasis added.)

[6] Distribution of contract time contained in Addendum # 2 to the contract required that paving work was to be completed by the eighty-sixth day of the contract, or September 10, 1980. The remaining sixty days of the contract were allocated for the installation of traffic light signals. The contract dictated that this schedule should control the distribution of time unless Burrell submitted a substituted schedule. Burrell never submitted a substituted schedule, but chose to proceed with the work allocating time as it deemed appropriate to complete the project before the October 31, 1980 cut-off date.

forth his findings in an adjudication, that adjudication must include all findings necessary to resolve the issues raised by the evidence which are relevant to the decision.' Lipchak, supra at 457, 383 A.2d at 972.

*State Highway and Bridge Authority v. E. J. Albrecht Co.,* 59 Pa. Commonwealth Ct. 246, 255, 430 A.2d 328, 332 (1981). "It is not within the province of this court to retry the case or to make independent factual findings and conclusions from the evidence." *Department of Transportation v. Anjo Construction Company, Inc.,* 87 Pa. Commonwealth Ct. 310, 315, 487 A.2d 455, 458 (1985). Therefore, we must vacate and remand to the Board to determine whether Burrell has met its burden to establish entitlement to additional compensation for its costs to complete this project.

On remand to the Board, it is within our power to order the Board to proceed as we request. 72 P.S. §4651-8(c). We request the Board to make specific findings on the following matters:

1. Whether the failure to complete the project within the 146 day time frame was due to specific delays caused by either Burrell or DOT.

2. Whether DOT's denial of Burrell's request to pave past the October 31, 1980 deadline was justified, considering

(a) DOT's past record of granting extensions of a paving deadline to other contractors;

(b) DOT's past record of granting extensions of paving deadlines to Burrell;

(c) DOT's reasons for refusing, in this case, to grant an extension of time to pave past the October 31, 1980 deadline.

ORDER

NOW, December 11, 1987, the order of the Board of Claims, dated March 29, 1984, at Docket No. 807, is vacated. This matter is remanded to the Board for further findings in accordance with this opinion.

Jurisdiction relinquished.